Good morning. We have five cases on the docket today, three submitted without briefs. And the first case is Belhumeur v. Bonnett, 06-1351. Mr. Hopkinson, as you know, the appellant here has waived the right to argument. He requested argument and I'm going to hold it with you this morning at 15 minutes to 8 o'clock. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is John Hopkinson. I'm representing the appellees Alex Belhumeur and Linda Dyer Belhumeur, his wife. With me today is Co-Counsel Joseph Donahue. He was the lead counsel in much of the litigation below for which this case is now on appeal. He's here to respond to questions that the Court may have relating back to those days in the event I'm not able to answer those questions. My presentation will be brief. Before we get to the legal issues, I would request the Court indulge me in a very short tying together of some of the underlying facts as it relates to ownership issues and mentorship issues that have been quite confusing through the last decade or so. I do have three extra sets of this visual aid in the event the Court would like to have them for taking notes or for any other purpose. Was this part of the record? It was submitted within the time period provided by the Court's rules as a visual aid. All the information presented here is in the briefs and in the record. It's just that the totality of the record is very contentious. Is it different from the one that was in the briefs? No, it's the same one. It's just in color. Okay. Would the Court like to have the colored version? No, that's fine. Okay. Counselor, do you mind if I direct you right to the collateral estoppel issue? My question for you is, it seems to me as I read this, that one thing that concerned me was the District Court's decision that there couldn't be collateral estoppel here because this is a, a blunder tongue only allows for a prior finding of invalidity, not a subsequent one. Well, it seems to me that our Dana Court case from 1989 was absolutely clear that we allow appellants to raise collateral estoppel at any point, even as late as the appeal stage, if never raised before. So, while I'm not saying for sure the District Court got the ultimate decision on collateral estoppel wrong, it seems to me that their rationale is not consistent with our precedent and it would be very difficult for us to affirm on that basis. Is there something you'd like to tell me about whether you agree or disagree with that assessment of Dana Court? I agree and want to amplify it. The precedent of this Court as well set a later review of judgments. I think the District Court, in making that statement, perhaps was unaware of this Court's precedent. It started with Dana Court. That was one of several grounds for the District Court holding that the collateral estoppel rule could not be invoked in the case below. So, I think for purposes of this appeal, the appellees are not relying on that part of the lower court's decision. It's really irrelevant to your consideration here today. It just doesn't apply. So, that leaves us with the reissue question. And the interplay between the reissue statute and the collateral estoppel rule as specifically set forth in Blondertongue and its precedent. Let me ask you about the reissue. If you've got a client that's a potential infringer and you do your due diligence and you figure out there's a mess-up in the patent, a procedural mess-up that got the wrong name of someone or whatever, can you advise your client to go ahead and be safe and free from infringement because there's a problem with the patent? How can you do that if you're correct? I assume your view is that the reissue applies retroactively, so that at any time you can come in, the patentee can come in, fix the patent, and that would then apply retroactively to people who, relying on public notice, proceeded with their conduct because they assumed there was a problem with the patent. Lots of questions in that one. But I believe the reissue statute on its face says that. If it's the type of problem in a patent for which the reissue statute applies, let's not forget the reissue statute is remedial in nature. And by its terms, it relates back. So I say that's the first answer to that question. We just directly apply the reissue statute. With respect to questions of inventorship, there's another statute that's also somewhat remedial in nature. That's Section 256. That doesn't have a time limit. That statute provides that either the district court or the patent office can correct inventorship errors in the event that the hypothetical you pose relates to an inventorship issue. It then becomes a tactical and strategic decision by litigation counsel. Is it better considering all of the circumstances to go back to the patent office and try to have inventorship corrected, or is it better to put the evidence in front of the district court and correct it? A case that is several years old now, the name I don't remember, but this issue came up, and there was a very precise procedure set forth in one of this court's opinions about how do you correct procedurally those type of errors in a district court proceeding. In this case, the inventorship issue, that got off track way back in 1994, way back over here when the 589 application was filed, and the prosecuting attorney, Mr. April, correctly filled out the forms for deleting the two people who did not invent his basic invention, which is this, the puck that has the runners. He invented that because old hockey pucks on ice surfaces don't slide very well, so he put runners on it. It slides well on wood surfaces and concrete surfaces, which this sport is a surface that it plays on. This kind of puck, however, doesn't bounce off of walls, off of the boards, and so prior to filing the first patent application, he went to some mold engineers, some experts, to solve that problem, and they came up with the puck that has the open space in the middle, or as it's sometimes referred, the outer ring. That was the basis of the first patent application, and the claims of the original 410 patent were combination claims that claimed the combination of the runners and the pucks. Things got off track, as I said, in the ownership issue back in 1994, and going back to your question, Judge Gross, the patent office records never were corrected until after this court's second opinion, and on the eve of trial, trial and remand, we submitted papers to the patent office to correct the patent office records. Those were approved. The decision from the patent office, granting the petition to correct inventorship, didn't get filed until two days after the district court's final judgment in the case below. What about the terminal disclaimer, counsel? It's my understanding that the 410 patent and all inventions related there to were assigned to the RHI partnership in January of 1996, and then your client filed a terminal disclaimer in January of 1997, saying he owned it all. He knew he had assigned it. He did not own it at that point in time. Why isn't that a false affidavit filed to the PTO that could create all kinds of problems for you with regard to inequitable conduct or otherwise? Well, I think that problem was first identified in the prior appeal, and that relates to this other, the second of the two basic factual problems that created this entire mess. The first problem, of course, was the 94 related inventorship. The patent office didn't acknowledge the change of inventorship. The second problem occurred over here in the early part of 1996 when the patent attorney had filed the continuation application. He was under the impression that the ownership was the same, but in fact, the Bellhammers had engaged in a series of business transactions that took place in early 1996 through July of 1999 where they were trying to work with some people to set up a professional roller hockey league. That series of transactions involved assignments and reassignments of the patent. The 410 patent went back to the Bellhammers in July 16th of 1999, but getting back to your question specifically, Judge Moore, at the time these statements were made, the assignment of the 410 patent was retroactive to January 1st, 1996 by its terms, but it was actually assigned or signed by the three inventors of the invention for the 410 patent in February and March of 1996, and this was done by an attorney different than the patent prosecution attorney. It was done by a business attorney. It was in relation to this series of transactions that ultimately failed and were related to trying to set up this professional hockey league. That issue, the issue of ownership, is one that was also corrected at the Patent Office records. That was corrected through the terminal disclaimer. Excuse me. It was corrected finally in the reissue application where the Patent Office received the evidence and... But in 1997, you didn't have a right to file the terminal disclaimer. You allege that there was no common ownership at that time. The facts of your case are such that there's no common ownership, right? RHI had the 410, and you're saying the Bellhammers had the right to the 161, the right to pursue the 161. Yes, true. So nobody... So on January 28th of 1997, when you filed a terminal disclaimer in this case to obviate the double patent rejection, there was no, in your view, no common ownership. So that rejection could not have been overcome by the method you chose to overcome it with anyway. If memory serves correctly, Mr. Abram tried to overcome it in two different ways. One, he tried to prove that there was a distinct invention, and he also submitted a terminal disclaimer. But the truth of the matter is it goes way back to this problem that was created back in 1994 by the Patent Office where they failed to acknowledge that it was a separate invention, separate ownership, because Mr. Bellhammer himself... Counsel, it's not a separate invention, right? This is a continuation application. No. The 161 patent, isn't it a continuation or a continuation part of the 410? Absolutely not. I think it's well settled that in the beginning, the original owner of a patent is... the patent rights is the inventor. When it's a sole inventor, the sole inventor is the owner. When, in 1994, this application was filed deleting the two inventors who jointly invented the cuff that had an open ring or the outer ring with the open spaces, they no longer had ownership in the patent rights that related to the claims in this continuation type application. It must be... The argument being that was invented by only one person. Precisely. Ownership of the patent rights... Counsel, you just told me no when I asked you if this was a continuation, and I'm looking at your 161 patent and it says on its face that it is a continuation of that very patent that I just asked you about. Exactly. That's part of the problem. The patent records, this line here, patent prosecution records, ownership patent records, it's in error. It wasn't corrected until March 24th, 2006, two days after the district court in the case below issued its final judgment. That is a result or that is a statement that reflects one of the two fundamental errors that began way back in 1934 when the patent office ignored, refused, overlooked, clerical mistake, whatever. It was a mistake in failing to take into account the fact that all of the claims in this continuation application were drawn solely to the invention directed to the runners and not to any claim that was directed to this invention, the one that had the outer ring or, if you prefer, the inner gap. And so at the moment, that application, that earlier application was filed with claims only to this invention. The true owner, true owners, were Alex Belhumer because he was the sole inventor. And simultaneously under California community property law and civil code law, simultaneously it became community property of himself and his wife. But counsel, is this or is it not a continuation patent? It was. Because the reissue seems to list itself as a continuation patent as well. You didn't in reissue correct whether this is a continuation patent. You simply corrected the issue of inventorship in the terminal disclaimer. But if this is a continuation patent of the 410, then the only way to overcome the obvious mistype double patenting would be through a terminal disclaimer. I don't think so. It was a continuation type application of the original application, the 077, filed in September of 1992, which included disclosure of two inventions. It included the disclosure of the combination invention, the runners plus the gap. And that's the application that became the 410 patent. Exactly. Are you trying to tell us this is one of those cases that are resolved by the old saying, are you going to believe what you see or are you going to believe what I'm telling you? Believe what the record shows. I mean, there's no dispute, as I can read the record, there's no dispute that when the patent attorney Abra filed this application in 1994, he correctly, in fact, perfectly filled out the forms that deleted the other two inventors. The Patent Office ignored that. All of the Patent Office records from that point, 1994 through March 24, 2006, that's what, 14 years, all of those Patent Office records were incomplete or incorrect, but this is an error. They carry the same old inventors forward, is that what you're saying? On the cover of the 161 patent, which issued from the continuation type application, the cover page of the reexamined patent, the cover page of the reissued patent, all list three inventors, and, in fact, the existence of the three names on the cover page was one of the main reasons why the panel that had this case before you vacated and remanded to the district court because of what appeared to be something that was totally… But in answer to Judge Moore's question, are you also saying those were not continuations of the original patent? They're not continuations of a patent. They're continuations of a co-pending application for patent that disclosed two inventors. Now, if we get into the distinction between what is a continuation and what is a divisional, as I recall in PDP's rules, a true divisional is one in which the Patent Office examiner says, wait a minute, you've got two inventors here. And so then in responding to a restriction requirement, the prosecuting patent attorney labels the continuation type application as a divisional. But in both cases, they're called continuation type because they meet the rules and the statute of Section 120.119. Well, your time has expired. We thank you.